THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES J. WYLAM and JANICE L. WYLAM | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | 3:16-CV-2112 |
| | : | (JUDGE MARIANI) |
| TRADER JOE'S COMPANY et al. | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This case is a negligence and loss of consortium suit arising out of a workplace injury. Plaintiff was injured when the scaffolding he was standing on broke loose, causing him to fall and hit his head. Doc. 1. One of the defendants, World Class Distribution, Inc. ("World Class Distribution"), filed a third-party complaint against other entities, claiming that to the extent it is found liable, the third-party defendants are liable to it for contribution or indemnity. Doc. 20. Third-part defendant Teletower Access Solutions Ltd. ("Teletower"), a United Kingdom manufacturer, moved to dismiss, arguing that this Court lacks personal jurisdiction over it. Doc. 34. For the reasons that follow, the Court will deny Teletower's motion without prejudice, subject to additional jurisdictional discovery.

### II. PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiffs James Wylam and Janice Wylam filed a Complaint against World Class Distribution, among other defendants, for negligence and loss of consortium arising from

injuries allegedly sustained by Mr. Wylam. Doc. 1. Mr. Wylam worked as a maintenance mechanic for Full Steam Staffing Company. *Id.* ¶ 18. Defendants operated a facility in Nazareth, Pennsylvania and allegedly employed Full Steam Staffing employees, including Mr. Wylam, to perform maintenance tasks at the facility. *Id.* ¶¶ 20, 22-23. On October 19, 2016, while performing maintenance work, Mr. Wylam climbed on the scaffolding in the facility, and "suddenly and without warning the guard rail broke loose, causing Mr. Wylam to fall backward on the hard ground, hitting his head. *Id.* ¶¶ 37-38.

World Class Distribution filed a third-party complaint against Teletower, Telescopic Access Solutions Corp. ("Telescopic"), and NFI Industries on January 30, 2017, alleging that the scaffolding on which Mr. Wylam stood was in fact owned by NFI Industries. Doc. 20 ¶ 14. It further alleges that Teletower, along with another third-party defendant, Telescopic Access Solutions Corp. ("Telescopic"), "designed, manufactured, sold, distributed and placed [the scaffolding] into the stream of commerce…directly or indirectly to NFI [Industries]." Doc. 20 ¶¶ 15-16. The third-party complaint claims contribution and indemnity from all three third-party defendants. With respect to Teletower, the complaint avers that it has its "principal place of business located at the United Kingdom," but claims this Court has personal jurisdiction over all third-party defendants "because Plaintiffs' lawsuit arises out of the transactions, occurrences, and business activities of Third-Party Defendants in Pennsylvania." *Id.* ¶¶ 8, 12. On May 15, 2017, Teletower filed a motion to dismiss based on lack of personal jurisdiction. Doc. 34.

Teletower's motion is accompanied by a sworn affidavit by Richard Calvy, the managing director of Teletower. Doc. 34-7. According to the affidavit, Teletower is incorporated and has its principal place of business in England. *Id.* ¶ 3. While the third-party complaint does not allege a relationship between the third-party defendants, the Calvy affidavit avers that one of the third-party defendants, Telescopic, has the same corporate parent as Teletower, though the two entities keep separate business functions, books, and tax filings. *Id.* ¶¶ 4-6. In the past six years, Teletower supplied its products to two United States distributors. From 2012 to 2013, Teletower supplied products to Telescopic, which is located in Minnesota. *Id.* ¶ 7. From 2013 to 2014, Teletower supplied products to Fortress Industries, Inc., which is located in California. *Id.* ¶¶ 7-8. As of 2014, Teletower ceased supplying products to either distributor and thus terminated any sales to the United States. *Id.*

Teletower has never owned any property in the U.S., registered to conduct business in the U.S., manufactured its products in the U.S., banked in the U.S., had any offices in the U.S., or conducted any business in the U.S. other than sales to the two U.S. distributors in Minnesota and California from 2012 to 2014. *Id.* ¶¶ 10-12, 15-16. It has never sold any products or services directly to Pennsylvania, employed any employees or agents in Pennsylvania, or advertised in Pennsylvania . *Id.* ¶¶ 12-14. None of these facts are disputed by World Class Distribution.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12, a defendant may move to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) ("It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."). "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

## IV. ANALYSIS

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). "Due process requires that the defendant be given adequate notice of the suit and be

subject to the personal jurisdiction of the court." *Id.* (internal citations omitted). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014) (citing FED. R. CIV. P. 4(k)(1)(A)). In Pennsylvania, the state's long-arm statute provides that personal jurisdiction extends "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. 5322(b). Accordingly, this Court may exercise personal jurisdiction over a defendant if doing so does not violate the Due Process Clause. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779-80. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the *suit* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (alteration in original) (quoting *Daimler AG*, 134 S. Ct. at 754).

Here, it is readily apparent that the Court does not have general personal jurisdiction over Teletower. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum

5

State." *Goodyear*, 564 U.S. at 919. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 134 S. Ct. at 760 (internal quotations marks and alterations omitted). In addition to these two paradigm bases, there may exist "exceptional case[s]" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19; *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) ("It is ... incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.") (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). "A corporation's 'continuous activity of some sorts within a state,' ... 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear*, 564 U.S. at 927 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

Here, Teletower is incorporated and has its principal place of business in England. Doc. 20 ¶ 8; Doc. 34-7 ¶ 3. It has never conducted business in Pennsylvania, marketed in Pennsylvania, hired employees in Pennsylvania, held bank accounts in the United States, owned any property in the U.S., registered to conduct business in the U.S., or manufactured its products in the U.S. Doc. 34-7 ¶¶ 10-16. Furthermore, Teletower has only had two American distributors from 2012 to 2014, one located in Minnesota and the other in

California. *Id.* ¶¶ 7-8. At the time of Mr. Wylam's accident, from which this the original lawsuit arises, Teletower had ceased all sales to the United States. *Id.* ¶ 8. World Class Distribution does not dispute any of these statements, nor does its third-party complaint allege that Teletower engaged in any activities in Pennsylvania. Thus, the Court cannot find contacts "so substantial and of such a nature as to render" Teletower at home here. *Daimler*, 134 S. Ct. at 761 n. 19, 752, 762 (holding that Mercedes-Benz USA was not "at home" in California despite the fact that it is "the largest supplier of luxury vehicles to the California market," and that its "California sales account for 2.4% of [its parent's] worldwide sales.") *See also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559, 198 L. Ed. 2d 36 (2017) (holding that BNSF Railway was not at home in Montana despite the fact that it had "over 2,000 miles of railroad track and more than 2,000 employees" in the state).

Turning to the question of specific jurisdiction – the Third Circuit has established a three-part test to determine whether a district court can exercise specific personal jurisdiction over a defendant. *See O'Connor*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair

play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476).[1] The first two steps address "whether a defendant has the requisite minimum contacts with the forum," *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009), and the third step concerns whether exercising jurisdiction is reasonable under the circumstances.

The key inquiry in this case is whether Teletower has purposefully directed its activities at Pennsylvania. The Third-Party Complaint contains no *specific* allegations of Teletower directing any activities at Pennsylvania, such as allegations of Teletower advertising here, conducting business here, hiring employees here, or directly shipping products here. Instead, it conclusorily states that "[t]his Court has personal jurisdiction over Third-Party Defendants because Plaintiffs' lawsuit arises out of the transactions, occurrences, and business activities of Third-Party Defendants [including Teletower] in Pennsylvania," and that Teletower and Telescopic "designed, manufactured, sold, distributed and placed [the scaffolding] into the stream of commerce...directly or indirectly to NFI [Industries]." Doc. 20 ¶¶ 15-16. In response, Teletower has submitted a sworn affidavit submitting that it has never conducted business activities in Pennsylvania, including marketing or hiring employees here. Doc. 34-7. World Class Distribution has not disputed any of the factual assertions in Teletower's affidavit.

---

[1] A slightly different test applies to claims of intentional torts. *See O'Connor*, 496 F.3d at 317 n.2 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). As no intentional torts are alleged in the Third-Party Complaint, the Court will apply the *O'Connor* test.

8

Instead, World Class Distribution argues that specific jurisdiction may be found under the "stream of commerce" theory. Doc. 36, at 3. The theory confers specific personal jurisdiction "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide*, 444 U.S. at 298. The "stream of commerce" is generally understood as "the regular and anticipated flow of products from manufacture to distribution to retail sale." *D'Jamoos*, 566 F.3d at 105–06 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987)).

In *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), the Supreme Court attempted to provide guidance on the requirements of personal jurisdiction under a stream of commerce theory. But no majority of the Court could agree on a single approach. As a result, two plurality opinions emerged. The first, authored by Justice O'Connor, advocated for a more stringent test requiring "additional conduct" evincing an intent to "serve the market in the forum state":

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. Co.*, 480 U.S. at 112. The second plurality opinion, authored by Justice Brennan, endorsed a less demanding test, stating that

> [a] defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117 (Brennan, J., concurring). However, even Justice Brennan's test is not so lax as to find jurisdiction upon the mere possibility that one's products will end up in the forum state. He cautioned that "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the *regular and anticipated flow of products* from manufacture to distribution to retail sale." *Id.* (emphasis added).

"Since *Asahi*, the Third Circuit Court of Appeals has not formally adopted the approach described in either plurality opinion." *Sieg v. Sears Roebuck & Co.*, 855 F. Supp. 2d 320, 326 (M.D. Pa. 2012). "Rather, our circuit court of appeals applies both standards announced in the *Asahi* plurality opinions." *Id.* See also *Pennzoil Products Company v. Colelli and Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998) (analyzing specific jurisdiction under both *Asahi* tests). Recently, in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011), the Supreme Court once again split into pluralities when addressing the stream of commerce theory. In *Nicastro*, Justice Kennedy's plurality opinion favored Justice O'Connor's more stringent test in *Asahi*, while Justice Breyer's plurality opinion declined to adopt either *Asahi* standard. As the opinion decided

10

on narrower grounds, Justice Breyer's opinion is controlling. *Cf. Sieg*, 855 F. Supp. 2d at 326 ("Justice Breyer's concurring opinion in *Nicastro* was decided on much narrower grounds.")

Justice Breyer found that a single sale to a New Jersey customer, coupled with sporadic contacts with other parts of the United States in an effort to sell products in America nationwide, is not sufficient for personal jurisdiction in New Jersey. *Nicastro*, 564 U.S. at 888. In dicta, Justice Breyer cautioned against a broad rule that would allow jurisdiction "against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue." *Id.* at 891. He also found the fact that the defendant is foreign to the United States to be a salient factor, rejecting a rule that would require foreign firms to "respond to products-liability tort suits in virtually every State in the United States, even those in respect to which the foreign firm has no connection at all but the sale of a single (allegedly defective) good." *Id.* at 892.

Applying the recent guidance from the Supreme Court, it is clear that World Class Distribution has not established personal jurisdiction under a stream of commerce theory. Notwithstanding the wholly inadequate allegations in its third-party complaint, World Class Distribution offers in its response papers (1) exhibits showing that Teletower's products are sold by national retailers such as Home Depot, and (2) the conjecture that because

Teletower has "at one time, ha[d] distributors in at least two states [i.e. Minnesota and California]," there is a conceivable possibility that "those distributors agreed to serve as the sales agent in Pennsylvania." Doc. 36, at 8-9 (internal quotation marks omitted).

These claims by World Class Distribution are highly tenuous. Teletower submitted a sworn affidavit that it has, among other things, never advertised in Pennsylvania nor employed agents in Pennsylvania. The best rebuttal that World Class Distribution has mustered is the fact that *national* retailers, such as Home Depot, have made the decision to sell Teletower's products nationwide in the United States. This cannot be deemed "purposeful" activity directed at Pennsylvania. At most, World Class Distribution has shown that it is "foreseeable" that Teletower's products may be sold to any, all, or an unknown combination of states in the U.S. via national retailers. But it is well established in personal jurisdiction jurisprudence that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide*, 444 U.S. at 295.

At this stage, it is unknown whether Teletower had any knowledge of or control over these retailers' decision to sell Teletower products on their national websites—let alone knowledge of or control over whether those products would end up in Pennsylvania. *See, e.g., Regan v. Loewenstein*, 292 F. App'x 200, 204–05 (3d Cir. 2008) (denying jurisdiction under a stream of commerce theory when "Plaintiffs have not shown that any of the Defendants had the ability to control where the book would be distributed.") Furthermore, unaffiliated retailers' listing of such products can hardly qualify as a targeted advertisement

by Teletower. These listings do not evince a regular and anticipated flow of products from Teletower to Pennsylvania, especially since World Class Distribution does not allege if any of these listings resulted in a substantial number of sales in Pennsylvania. A finding of specific jurisdiction on such scant allegations and evidence would be exactly the kind of overbroad rule that Justice Breyer cautioned against in *Nicastro*, which would require a foreign firm like Teletower to "respond to products-liability tort suits in virtually every State in the United States, even those in respect to which the foreign firm has no connection at all but the sale of a single (allegedly defective) good." *Nicastro*, 564 U.S. at 892. The national retailers' listings do not constitute sufficient jurisdictional facts to establish specific jurisdiction.

As for World Class Distribution' conjecture that Teletower's two out-of-state distributors may have "agreed to serve as [its] sales agent[s] in Pennsylvania," it is just that—conjecture. Doc. 36, at 9. As the plaintiff in this motion, World Class Distribution has the burden to establish a *prima facie* case of jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). The speculation that Teletower's only two U.S. distributors, neither of which is located in Pennsylvania, could have "agreed" to conduct activities in Pennsylvania on behalf of Teletower is unsupported by either extrinsic evidence or factual allegations found in the complaint. Thus, World Class Distribution has not carried its burden to establish personal jurisdiction over Teletower in Pennsylvania.

**Jurisdictional Discovery**

The Court, however, will permit jurisdictional discovery, as requested by World Class Distribution. Doc. 36 at 5-9. The Third Circuit has "explained that if 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.'" *Metcalfe*, 566 F.3d at 336 (quoting *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)). Furthermore, jurisdictional discovery may be "particularly appropriate where the defendant is a corporation." *Id.*

But this permissive rule is not without limits. In *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 1 57 (3d Cir. 2010), the Third Circuit found plaintiff to fall "woefully short" of the standard required for granting jurisdictional discovery. "If the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained. A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Id.* (internal citations omitted).

While the Court does not now believe that personal jurisdiction exists based on the materials provided thus far, it also does not believe that Plaintiffs' claim is "clearly frivolous." This case is unlike that of *Eurofins*, in which the court found that if the evidence speculated

14

by the plaintiff indeed existed, it would have already been in plaintiff's possession. *Id.* The Court is mindful that Teletower's affidavit attests to the fact that it has "never controlled or employed any agents or sales people that conducted business on its behalf" in Pennsylvania. Doc. 34-7 ¶ 13. This statement would appear to foreclose World Class Distribution's speculation that Teletower's U.S. distributors may have "agreed to serve as [its] sales agent[s] in Pennsylvania." Doc. 36 at 9. But the Third Circuit has instructed that "'[a] plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery.'" *Metcalfe*, 566 F.3d at 336 (quoting *Compagnie*, 723 F.2d at 362). Furthermore, the listings of national retailers submitted by World Class Distribution suggest that there *may* have been sales of Teletower products in Pennsylvania—whether Teletower had knowledge of such sales, and the exact volume and nature of such sales, are questions that World Class Distribution should be permitted to pursue. At this early stage of litigation, the Court cannot find that World Class Distribution has been "undiligent" in not coming forth with more competent evidence. Therefore, the Court will permit jurisdictional discovery rather than dismiss Teletower as a defendant at this time. In the interim, Teletower's motion to dismiss will be denied without prejudice. Teletower will be granted leave to resubmit its Motion at the close of jurisdictional discovery in the event that it believes, upon the close of jurisdictional discovery, that there has been no material change in the facts discussed in this opinion.

## V. CONCLUSION

For the reasons outlined above, Defendant Teletower's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 34) is **DENIED WITHOUT PREJUDICE**, with leave to resubmit at the close of jurisdictional discovery. A separate Order follows.

Robert D. Mariani
United States District Judge